Birchard, J.
Section 5 of the statute for the protection of the Ohio canals (Swan’s Stat. 174) is in these words : “ Hvery person who shall lead, drive, or ride any horse, ox, or ass, mule, or other animal, upon the towing-path, or the bank opposite the towing-path of any canal, authorized by the laws of this state, except for the purpose of towing boats, or other floating things, upon the waters thereof, and except for the purpose of conveying articles to and from said canals, in order to their transportation on the waters of the same, or their delivery at their place of destination, shall forfeit, for every such offense, the sum of five dollars, and pay all damages consequent upon such offense, over and above said forfeiture.”
*471, 472 Section 37 of the act confers the power to prosecute in the cases provided for by section 5 exclusively upon certain officers in charge of the canals, as members of .the board of public works, resident engineers, superintendents, etc.
^Section 135 gives a right of action to the party injured against any such officer who shall institute a suit without probable cause.
In coming to a conclusion upon the merits of this case, it is important to bear in mind the mischief provided for, as well as the remedy. The state had learned, by the experience of some fifteen years, that people, especially in seasons of heavy traveling and bad roads, were in the practice of avoiding the deep mud of the roads, by traveling upon the banks of the canal, and not unfrequently, without regard to consequences, selfishly looking to their own convenience, to the exclusion of all care for the safety of the canal, or for the injury done to the state. By intrusting to the officers in charge of the public works, the exclusive right to prosecute for violations of the law, the legislature intended that the law itself should not become an instrument of mischief in the hands of every evil-disposed or litigious person, enabling them to prosecute for every casual or harmless act of riding or driving upon the banks of the canal. But that the power to prosecute should be used at the discretion of the officers named, to prevent the mischief to be remedied, whenever, in their judgment, the public interest required. The subject is of such a nature that a law, less general, would, in many instances, fail in securing the necessary protection. Hence, we may suppose, were employed the absolute terms which are to be found in section 5. To avoid the evil of frequent vexatious prosecutions, and to secure prompt action when meritorious causes exist, the discretion to prosecute or omit it, is confided to sworn and competent officers, who act under the responsibilities imposed by section 135. Can the court interfere with this discretion, in a case coming within the letter of the law? This is a question of some importance, yet we are not prepared to say that the record makes it incumbent upon us to pass upon it. Admitting, for argument, that a court might interfere, by refusing to render judgment in a case strictly within the letter, but not within the spirit, of the act, it does not follow that the judgment of *the Supreme Court, affirming the judgment of the common pleas, was erroneous. *473 The notice which was stricken out, and the bill of exceptions, do not show a case of absolute necessity for traveling upon the towing-path. They only show that it was the nearest route. By implication, the notice, and in terms the proof offered, show that a practical route, a little more circuitous, could have been taken. They therefore only show that the plaintiff’s convenience, not his necessities, induced him to do the act which the superintendent of the canal regarded as a violal’on both of the letter and spirit •of the law. In our opinion, the object of the act was to prevent men from making a mere matter of personal convenience paramount to any consideration of safety to the public interest. The design was to punish those who, to avoid a little inconvenience, or •to save a few moments’ time, would do acts tending to endanger a great and important public work.
No writ of error, having issued from the court in bank, to the Supreme Court of the county, a question arises, whether this court has jurisdiction of the case. In cases where writs of error go from the Supreme Court to the courts of common pleas, the cause is not considered before the former until after the service of a writ, with a citation to the opposite party, or an appearance entered, with a waiver of notice.
The writ from this court to the court upon the circuit is, however, a creature of the statute. Swan, 690. Section 2 authorizes the court in bank, or any two judges in vacation, to allow such writs, requiring them to be prosecuted within one year after the rendition of the judgment complained of.
Section 3 makes it the duty of the clerk of the Supreme Court of the county where the judgment sought to be reversed was entered, on being officially advised of the allowance of such writ, to make out an authenticated transcript of the record, on which the plaintiff in error shall enter an assignment of errors, with a prayer for a reversal, and forthwith transmit it to the clerk of the court in bank, to be by him entered on the docket of said court.
The clerk of the county is further ^required to issue a citation, which must be served twenty days before the sitting of the court in bank. This seems tobe all that is required by statute to give the court in bank jurisdiction. The clerk of the county must be officially informed of the allowance to entitle him to act. In what manner he shall be so informed, seems to be indicated by the statute. If the allocatur is by the court in bank, *474 the official signatures of all the judges, or a majority of them, to ■the allocatur, or a certified copy of the journal entry, is the proper way of officially advising him. If allowed by two judges in vacation, their official signature to the allocatur is all that is required.
Judgment affirmed.