Birchard, J.
To understand the proper application of the act of February 26, 1840, under which this action arises, it is necessary to take it as an entire thing, to construe .its several provisions together, and, also, to have regard to the reason and objects of the law. In itself, it is a beneficial statute, deserving a liberal construction for the purpose of advancing those objects. But while considerations of this nature are borne in mind, it is equally the duty of the Court to so far restrain their desire to promote its beneficial objects as to stop short of a construction so free as to lead to manifest absurdities. The claim *589 «of the defendant in error was for a debt due for “ materials, supplies and labor,” expended in building the canal boat Etna. The statute-' makes the boat liable for such debts, when contracted by the owner on account of the boat. These are the words:
“That steamboats and other water crafts navigating the 4 waters within or bordering upon this State, shall be liable ‘ for debts contracted on account thereof, by the master, owner, 4 steward, consignee or other agent, for materials, supplies or la-4 bor in the building, .repairing, furnishing or equipping the ‘ same,” &c.
Upon the trial the Court instructed the jury, that “if they 4 found, from the evidence, that the plaintiff (Treat,) built the 4 boat by contract for Standart, Griffith & Co. at a specific 4 price and delivered her under that contract, a liability attach-4 ed to the boat in favor of said plaintiff, under the act of Feb-4 ruary 26, 1840, entitled (an act providing for the collection ‘ of claims against steamboats, and other water crafts, and au4 thorizing proceedings against the same by name,5 and the 4 plaintiff was entitled to recover in this suit.”
To test the accuracy of this charge, let us consider who was the owner of the Etna up to the time of. the delivery. Treat had contracted to build her and deliver her at a particular time. Before the delivery she was, undoubtedly, his property. He was the owner and had the absolute control of her. He might have broken her up at any moment, and a sale and transfer by . him to any stranger would have vested in that stranger a valid legal title. If transferred without notice of the contract between him and Standart, Griffith & Co., the purchasers would have had a perfect title to the boat, one that nothing could have affected save the debts which Treat himself .had contracted as owner, for supplies, &c., furnished in building the Etna. For those debts the boat was liable, and a transfer by Treat to any person, or under any cirumstances, without notice of those debts or the assent expressly or tacitly given by them, would not have prevented Standart, Griffith & Co., or the hands that *590 labored upon the boat, in assisting to build her, from attaching and selling her under the statute, to satisfy their claims. The object of the act was to provide a remedy for those vy’ho otherwise might be defrauded, hindered or delayed in collecting their just claims, and to save them the inconvenience of " seeking out the owners and subjecting them to the payment of the debts contracted by their authority.' Looking to this'object and to the facts of the case, and all'difficulty about the law or its application vanishes'. Treat'could not recover. His. claim was not -for á debt contracted for labor, supplies or materials in the building of the. boat.' A.debt cannot exist without a debtor and a creditor. It is something whiclj grows out of a contract, and to every contract there must be two parties; the contractor who is ■ to be bound by it and- the' contractee to whom he is bound. . Treat could not contract with himself .to fnrnish himself materials for his own boat, any more-than he could sue himself for breaking such a contract'. Both ideas are absurd; one not more so than the other. His claim',, then, is simply a claim for the price due upon the sale arid delivery of the boat, and does not come within the letter or spirit of .the statute. Here I should-stop, but.for-the fact that different opinions, at times, have been held by other members of this Court. As that difference fnay still exist, and tend to throw doubts upon the law, a further examination, on my part, may subserve the public good. . .
The ' statute presupposes that the person having a demand for work, labor and materials against a boat, has a right of action at the same time, and co.-extensive therewith, against some third party, as owner. It provides that such party, on the seizure of the boat, by giving bond, may release the boat, and, that after trial and sale of the boat, if its proceeds are insufficient to satisfy the judgment, -the balance shall “ remain, to be collected on execution as on other judgments.” Swan’s Stat. 210, secs. 5 and 6.
In this case let us 'suppose, that, after the completion • of the boat Etna, Treat had held her as his own from the fall of the *591 year until the opening of navigation in the ensuing May, and then made the delivery to Staudart, Griffith & Co. Where would .have been the liability of the boat for his labor and materials in the mean time ? It attached, if 'at all, the moment the labor was performed and the materials were furnished. If it attached then, the delivery or non-delivery could have had no effect upon it. Treat was then the owner, and he contracted the liability, if it existed, with himself, as owner. He could not contract with himself. The boat could not contract with him; it had no faculty that would enable it to do so. Not intimating that the notion I am combating is an absurdity too palpable to find advocates, let us suppose that, before the delivery of the boat, in the case I have supposed, Treat had attached it for the labor by him performed in building it, and proceeded, in the forms prescribed by the statute, to a condemnation and sale, and that the Etna had passed into the hands of a purchaser from the sheriff for $10, leaving the residue of the judgment unsatisfied. Against whom would the balance of that judgment have “ remained to be collected on execution ?” Not against Standart, Griffith & Co. They were not to be liable for ariy thing until the boat was delivered to them; and in the supposed case there was no delivery. The plain meaning of the statute is, that the balance shall be a good judgment against the one who was, in fact, the debtor at the making of the contract for the labor and materials, that is, Wm. Treat, the owner of the boat. So, that, upon the theory of Mr. Treat’s counsel, he would be both plaintiff in execution arid defendant in execution to the same identical execution. A construction of the statute that works such results will derive but slight support from the members of the profession, and, I should hope, but little countenance any where.
The charge of the Court was, therefore, erroneous, and the judgment must be reversed: The claim was not for expenses incurred in building; it was for the balance of the contract price, and does not differ, in substance, from any balance that might be due from any purchaser to the vendor on an ordi *592 nary sale and delivery of a boat. Such vendor can always secure himself before the delivery of the boat.
Hitchcock, J., having been of counsel with Treat, took no part in this decision.