J. BRYANT WALKER, Solicitor of the City of Cincinnati, and a tax-payer of said city, Plaintiff, v. THE CITY OF CINCINNATI, CHAS. H. TITUS, Auditor, and WILLIAM HOOPER, MILES GREENWOOD, RICHARD M. BISHOP, PHILIP HEIDELBACH, and E. A. FERGUSON, Trustees of the Cincinnati Southern Railway, Defendants.

The act of the legislature of Ohio, passed May 4, 1869, authorizing any city of the first class, having a population exceeding one hundred and fifty thousand inhabitants, to construct a railroad terminating in and essential to the interests of such city, and to borrow as a fund for that purpose a sum of money not exceeding ten millions of dollars, is not a violation of section 6, article 8, of the present constitution of the State of Ohio, which provides, "That the general assembly shall never authorize any county, city, town, or township, by a vote of the citizens or otherwise, to become a stockholder in any joint stock company, corporation, or association whatever, or to raise money for, or loan its credit to, or in aid of, any such company, corporation, or association."
The said act, and the act of March 25, 1870, supplementary thereto, are constitutional and valid.

RESERVED FROM SPECIAL TERM.—This suit is brought for an injunction against the city and the trustees of the Cincinnati Southern Railway. The petition recites the act of the legislature, passed May 4, 1869, to authorize the appointment of trustees and the construction of the road, and the issuing of bonds of the city to the amount of ten million dollars for that purpose; alleges the appointment of the trustees under the act, and recites the proceedings of this court, as recorded, in relation to said appointment, stating that the trustees have organized and obtained an office, that they have procured the consent of the legislature of Tennessee to build the road through that State, and applied to the legislature of Kentucky for a like consent; that the Ohio legislature have passed another act, of March 25, 1870, supplementary to that of May 4, 1869, authorizing the city to advance fifty thousand dollars to the trustees for the purpose

of carrying into effect the object of their appointment, to be repaid out of the bonds to be re-issued under the original act; that the auditor has appropriated a portion of said fund, and there remains a part unappropriated; that the acts above mentioned are unconstitutional and void, and the advance of this money a misapplication of the public funds and not a proper corporate use, and asking an injunction.

The defendants have demurred.

*Walker & Conner,* for plaintiff.

*E. A. Ferguson,* for defendants.

TAFT, J.   We have presented for our consideration the constitutionality of those acts by which the city of Cincinnati has been authorized to construct the Southern Railroad, and to expend money preliminary to its construction by surveys and other preparations for the work.

That the legislature regarded the road as a matter of public concern to the city, and a proper work to be carried through by taxation on city property, is shown by the enactment of the law authorizing the issue of the bonds to build it, and the levy of the tax to pay the interest thereon; and that the people of Cincinnati entertain a like opinion is also evinced by the popular vote, as well as by the proceedings of the legislative body of the city.

The importance of this project as a Cincinnati project, and its public character as a subject of taxation, are questions, therefore, which have already been decided by those most deeply concerned, and by those who have been especially and primarily intrusted with their decision; and it would require a clear case against the opinions of the city and State legislatures, thus unequivocally expressed, to justify the court in contradicting them in its finding on this point.

It has been held by our Supreme Court that the con-

struction of a railroad might be a proper subject for the taxation of a municipal corporation, independent of and prior to the restrictions in our present constitution, and the issue of bonds and the levy of taxes to pay the interest on them was enforced by a writ of mandamus since the constitution of 1851 was adopted, the act under which the subscription was made having been passed prior to the change in the constitution. If the construction of a railroad had been a purpose beyond the scope of municipal taxation, the restriction in the new constitution upon the power of a city to lend its credit, or otherwise assist a private corporation in its construction, would not have been required.

The form in which such aid was granted usually was by lending bonds or money to the corporation which was constructing it, or by subscribing to its capital stock. The railroad company was a private corporation and operated its roads for its own profit, but the public derived large incidental advantages from its use. In this State it has been several times decided, that a municipal corporation had an interest in such a work to justify a municipal tax to aid in carrying it through. (2 Ohio St. 607, 647, 649; 14 Ohio St. 472, 479.)

If, then, the restriction in the present constitution against the aiding or subscribing to the stock of railroad companies by towns, cities, and counties had been omitted, the legislature might have authorized such aid to railroad corporations. (*Cass* v. *Dillon,* 2 Ohio St. 608; *Cincinnati, Wilmington and Zanesville Railroad Company* v. *Commissioners of Clinton County,* 1 Ohio St. 77; *Fosdick* v. *Village of Perrysburg,* 14 Ohio St. 473.)

It evidently follows, from these repeated adjudications, that if the legislature, under the old constitution, instead of authorizing municipal corporations to aid private corporations in constructing railroads, by the issue of bonds, or subscription to the capital stock of such companies, had authorized a city itself to construct a railroad deemed of

Walker *v.* City of Cincinnati et al.

public importance to such city, and indispensable to its welfare, it would have been constitutional. The same reason would have justified both methods of securing the same object.

It would have been at least as constitutional to have authorized the city to build the road, as to have authorized it to loan money to a private corporation in order that it might build it. By the latter plan, the accomplishment of a public purpose, through the application of the public funds, was left dependent upon the good faith and discretion of a private corporation, whose legitimate object was profit to its individual stockholders. This has long been regarded as objectionable.

The restriction in the present constitution which is supposed to prohibit the act authorizing the city of Cincinnati to build its Southern Railroad, is contained in the sixth section of the eighth article, which provides, "That the general assembly shall never authorize any county, city, town, or township, by a vote of the citizens or otherwise, to become a stockholder in any joint stock company, corporation, or association whatever, or to raise money for, or to loan its credit to, or in aid of, any such company, corporation, or association."

This restriction plainly cuts off the power to authorize cities to loan their credit to railroad companies or take stock in them. The power to authorize the city itself to construct such an improvement, however, is not mentioned.

By the fourth section of the same article, it is provided that "the credit of the State shall not, in any manner, be given or loaned to, or in aid of, any individual, association, or corporation whatever, nor shall the State ever hereafter become a joint owner or stockholder in any company or association in this State or elsewhere, formed for any purpose whatever."

Prior to the adoption of the constitution, "it was competent for the legislature, under the constitution of 1802, to construct works of improvement on behalf of the State,"

as it did the Ohio canal, "·or to aid in their construction, by subscribing to the capital stock of a corporation for that purpose," as it did in the case of the Cincinnati and Whitewater Canal Company, "and to levy taxes to raise the means, or by an exercise of the same power to author- ize a county or township to subscribe to a work of that character running through or into such county or town- ship, and to levy a tax to pay the subscription," as was held in the case of *C. W. & Z. R. R. Co.* v. *Clinton County*, 1 Ohio St. 77, and *S. & I. R. R. Co.* v. *North Township*, 1 Ohio St. 105; also several other cases, as 1 Ohio St. 153; 2 Ohio St. 608; 7 Ohio St. 327; 8 Ohio St. 394; 14 Ohio St. 482, 479, and still in other cases which need not be cited, but which leave no doubt on this ques- tion in the State of Ohio.

Nothing can be clearer than that this restriction upon the State is limited to its loaning its credit to companies or corporations, and to its "becoming a stockholder in any company." It can not be contended that the provision in- tended to prohibit the State itself from accomplishing di- rectly "any purpose whatever." The extent of the re- striction is that the State shall neither lend its funds to, nor become a member of, a private corporation for any purpose whatever. Its power to make necessary public improvements without the agency of corporations remains as it was before; and what it was before we have seen was not doubtful.

We feel bound to give a like construction to the sixth section, which applies to cities.

They can not be authorized now, as formerly, to lend their funds or their credit to, or to become members of trading corporations for any purpose whatever. But they can be authorized to expend their own funds in making necessary public improvements in the same manner, and to the same extent, as before the adoption of our present constitution.

In our opinion, it follows logically and unavoidably from the decisions of our own State, and indeed from the cur··

rent of authorities in other States, that these acts are constitutional. Upon a careful examination of our present constitution, and a comparison of it with the constitution of 1802 and the adjudications of our courts. under it, the case appears to our minds clear of doubt.

If, however, the case were doubtful, we should not be justified in pronouncing the acts of the legislature void. The presumption must always be in favor of the validity of the laws enacted by the State legislature, if the contrary is not clearly demonstrated.

The incompatibility must be clear to warrant the setting aside of an act of the legislature duly passed. (*C. W. and Z. R. R.* v. *Commissioners of Clinton County*, 1 Ohio St. 77; *Lehman* v. *McBride*, 15 Ohio St. 591; 10 Ohio, 235; 11 Ohio St. 641.)

In *Lehman* v. *McBride*, our Supreme Court declared " that while it was the right and the duty of the judicial tribunals to give full force and effect to the organic law of the State, and, therefore, to declare null and void any attempted acts of legislation which contravene the limitations imposed by the constitution upon legislative power, yet such judicial interference can not be justified in doubtful cases."

Such is the uniform current of judicial authority. Mr. Cooley, in his work on Constitutional Limitations, 87, 88, lays down the same rule.

It was said in the case of *Sharpless* v. *Philadelphia*, 21 Penn. St. R. 164, which arose from an attempt to resist a tax levied to pay a railroad subscription, that an act resting in the discretion of the legislature will be pronounced void, " only when it violates the constitution, palpably, plainly, and in such a manner as to leave no doubt or hesitation in our minds."

And in *Cheney* v. *Hooser*, 9 B. Mon. 345, the court declared that a " tax must be considered valid, unless it be for a purpose in which the community taxed has palpably no interest."

Walker *v.* City of Cincinnati .et al.

We are not at liberty to use our judgment as to what is judicious for the State to enact, or for the people of the city to vote. Can we assume judicially that the people of this city have no interest in the Southern Railroad, contrary to the solemn act of the legislature, whose duty it was to pass on this very question, and contrary to the vote of the people? Is this a case in which we can hold that the State legislature has clearly gone beyond its authority? We think not.

The objection has been suggested that the Southern Railroad is to extend a great distance from Cincinnati, and beyond the limits of the State of Ohio. The objection is plausible. But power has often been granted to cities to operate beyond their corporate limits in order to secure something essential to their welfare. The city of New York was authorized to bring the water of the Croton river a distance of forty miles, at the cost of $11,000,000; nor can we suppose that the exercise of such authority for such a purpose would have been prevented if the Croton aqueduct had crossed the line of a State.

Cincinnati has, in several instances, exercised authority granted by the legislature to make costly improvements beyond the corporate limits. The House of Refuge was built under such a law. The Infirmary was beyond the limits, also the Work-house.

The city was authorized to expend funds in the purchase of stone coal in the mines which are not located within the corporation, but in different States, " and in all the necessary agencies for the procuring, transporting, and delivery of said coal" to the city, for the purpose of protecting the citizens against exorbitant prices in the times of scarcity.

Cincinnati, under a law of the legislature, loaned to the Ohio and Mississippi Railroad Company, whose improvement lay principally beyond and outside of the State of Ohio, a large sum of money, and afterwards exchanged its bonds for the stock of the company.

Under a like law of the legislature, the city of Cincinnati has already invested $150,000 in the railroad from Cincinnati to Lexington, in the same general direction as that contemplated for the Southern Railroad, and altogether outside the State of Ohio.

If there were a lake of good water on the south side of the Ohio river, and if the legislature and the city itself were of the opinion that the welfare of the city required that an aqueduct should be constructed by the city to draw pure and wholesome water from that source, and the proper legislation were had in Ohio and Kentucky, it can not be doubted that the city could raise the money by taxes, under the authority of such legislation, to do the work.

The fact that it is expected that the Southern Railroad will extend beyond the State line a much longer distance, or that it is not water which is to be drawn by it to Cincinnati, does not change the principle. We do not say that this principle could not be so abused as to require the interposition of the judiciary to restrain it. But we have no evidence on which we can so find in the present case.

The opinion of Judge Cooley in the case of *The People* v *Salem*, in the Supreme Court of Michigan, is not inconsistent with the decision we now make. That opinion decided that the levy of a tax to raise money to give to a railroad company, either by loan, or by subscription to the capital stock, to help construct its road, is not a proper use for the taxing power, because it is giving the public fund to a private corporation. (9 Am. Law Reg. 487.)

It has no application to a case where the municipal corporation itself constructs a public work essential to its own welfare, as the learned judge has himself declared in an opinion published since that decision, in which he says, "that the power of cities in Ohio to construct works of internal improvement, with legislative permission, has been settled by judicial decision," and "that there is nothing in the present constitution of Ohio designed to prevent the local authorities from levying taxes for the construction of

railroads where their own agencies are employed for the work." Indeed, the opinion coincides entirely with that which we have expressed. Nor is the case of *Whiting* v. *The Sheboygan Railroad Company*, in the Supreme Court of Wisconsin, as published in 9 Am. Law Reg. 156, in conflict with our opinion as now announced.

In that case, Dixon, Judge, giving the opinion of the court, held that a municipal corporation could not, under the constitution of that State, loan its funds to a railroad corporation, although he expressed the opinion that it might subscribe to the capital stock of the company, because it became to that extent owner of the improvement, and such ownership made it public property.

It is not necessary that we should consider any such distinction. But we may add that we have found no authority, and have been referred to none, inconsistent with the principles we have expressed.

Upon the whole case, we hold that " the act relating to cities of the first class, having a population exceeding one hundred and fifty thousand inhabitants," passed May 4, 1869, and the act of March 25, 1870, supplementary thereto both of which are recited in the petition, are constitutional and valid—in which opinion we are unanimous.

STORER, J. It might be supposed, in a case of so much importance, that each of the judges would announce an opinion; but Judge Taft had so exhausted the subject, and given the individual views of his associates so fully, combining them with his own, that it is scarcely necessary they should do more than subscribe to his opinion.

There was one idea, however, it might be proper to refer to here, by the way of illustration, as it was suggested when the case was before the judges in the consultation room. Suppose it was necessary to build a bridge across the Ohio river at this point, could not the legislature authorize the city of Cincinnati to build it, provided the State of Kentucky would permit the abutments on that side to

be put up? It did not appear to the court there could be any doubt on that point.

HAGANS, J. The present case has been under advisement with the General Term since the month of October; the whole subject has been most carefully considered, in view of the magnitude and importance of the questions involved, as well as the discussion of them that has been had, not only before the court but elsewhere. The result reached is entirely satisfactory to each member of the court.