Burket, J.
The plaintiff in error, also plaintiff below, urges that the proposition for free turnpikes was not carried at the general election in November, 1894, for the reason that while the votes in favor of the proposition exceeded those against it, the votes in favor of it were less than a majority of the votes cast for secretary of state at that election.
The usual rule in such eases is, that a majority of all the electors voting- at such general election for state, county or township officers, is required to carry the proposition. But the act in question seems, with sufficient clearness, to require only a majority of the votes cast upon the subject of free turnpikes to carry it; and as such majority was had in this case, the commissioners were authorized to proceed under the act, unless the act itself should be found to be unconstitutional.
*479 It is urged that the act in question is in conflict with section 26 of article 2, of the constitution, which provides that, “All laws of a general nature shall have a uniform operation throughout the state.”
That the act is local, and has no operation outside of Athens county, is beyond question. While it is inform general, it is in its operation local, and might just as well have named, Athens county, by name, as to have designated it by its population at the last federal census of not less than 35,190, and not more than 35,200. Fields v. Commissioners of Highland county, 36 Ohio St., 481. The constitutionality of an act, under said section 26, is determined by the nature of its subject matter, its operation and effect, and not by its form only. In form an act may be general, while in its operation and effect it is local. Kelley v. State, 6 Ohio St., 269; State v. The Judges, 21 Ohio St., 1.
The legislative power of the state is vested in the general assembly without limitation, by section one, of article two, of the constitution, and the limitations upon that power are found in other sections of the same instrument. By that section full power is granted to pass local and special laws, and that power exists in all cases, unless limited by some other part of the constitution. By section 28 of the same article, the power to legislate by local or special laws as to correcting errors, omissions and defects in instruments and proceedings, is taken away.
By section two, of article twelve, the power to pass special laws as to the taxation of property is taken away. By section one, of article thirteen, the power to pass special laws conferring corporate power is taken away. By section two of the *480 same article, the power to form corporations by local or special laws, is taken away. And by section six of the same article, the power to organize cities and villages by local or special laws is taken away. The legislation as to these named subjects, is required to be by general laws, and then the power of local and special legislation is further limited by this broad and comprehenive provision In section 26, of article two, requiring all laws of a general nature to have a uniform operation throughout the state.
The case of Kelley v. State, 6 Ohio St., 269, does not hold, as is urged, that no general rule as to the scope and force of this section can be laid down by this court. On the contrary, the court in that case does lay down a rule as to the construction of this section, but says that it does not undertake to discriminate nicely,-or define with precision. The court, through Scott, J., says: “Fe have then in the constitution, first, a general unqualified positive prohibition or limitation of legislative power, forbidding the giving of a partial operation to any law of a general nature, or, in its affirmative terms, requiring that a uniform operation throughout the state shall be given to all laws of a general nature. Without undertaking to discriminate nicely, or define with precision, it may be said that the character of a law, as general or local, depends on the character of its subject matter. If that be of a general nature, existing throughout the state, in every county, a subject matter in which all the citizens have a common interest, * * * then the laws which relate to and regulate it, are laws of a general nature, and, by virtue of the prohibition referred to, must have a uniform operation throughout the state.”
*481 Time and. changed conditions may make it necessary to enlarge and extend the construction of the scope of section 26 of the second article of the constitution, hut it is certainly safe to say now that every subject of legislation is either of a general nature on the one hand, or local or special on the other. It can not be in its nature both general and special, because the two are inconsistent. If it is of a general nature, the constitution requires that all laws — not some laws — on that subject shall have a uniform operation throughout the state.
But how are we to determine whether a given subject is of a general natüre? One way is this: if the subject does or may exist in, and affect the people of,, every county, in the state, it is of a general nature. On the contrary, if the subject cannot exist in, r affect the people of every county, it is local, or special. A subject matter of such general nature can be regulated and legislated upon by general laws having a uniform operation throughout the state, and a subject matter which cannot exist in, or affect the people of every county, can not be regulated by general laws having a uniform operation throughout the state, because a bw can not operate where there can be no subject matter to be operated upon.
So that practically this section of the constitution means that the legislation on a subject to which, in its nature, laws having a unform operation throughout the state can be made applicable, must be by statutes having such uniform operation, and can not be. by local or special acts. The subject of the statute being of a general nature, all laws without exception as to such subject, *482 must have a uniform operation. The constitution makes no exception, and the courts can make none.
The evident intention was, to restrict local and special legislation to such subjects as are in their nature not general, so as to-compel as near as possible, uniformity of laws throughout the state. Another object of this restriction was to induce each member of the general assembly to employ his time, knowledge and skill in passing good laws for the whole people of the state, and to prevent the exchange of courtesies with his fellow members for the passage of local or special laws for the benefit of a favored few.
With legislation thus limited to general laws, it was thought that one session of the general assembly in two years would be ample, and therefore, provision was made for only biennial sessions.
There were many other considerations for thus providing for general legislation, some of which have been pointed out by this court in the following cases: Lehman v. McBride, 15 Ohio St., 591; McGill v. State, 34 Ohio St., 228; State ex rel v. Ellet, 47 Ohio St., 90; Cass v. Dillon, 2 Ohio St., 617; State v. Nelson, 52 Ohio St., 88; Falk ex parte, 42 Ohio St., 638; State ex rel v. Bargus, 53 Ohio St., 94.
The case of Kenton v. State, 52 Ohio St., 59, and other like cases throw but little light upon the question here involved, for the • reason that in those eases the additional doctrine of classification of cities and villages is involved, a doctrine which has nearly wiped out .the limitation as to general laws in section six of article thirteen of the constitution and which should itself be overruled, so as to enable us to get back to the whole *483 some provisions of that section. But the doctrine of classification of cities and villages, as heretofore upheld, has been applied only to their organization and has not been, and can not be, applied to subjects in such cities which are of a general nature, and require laws of a uniform operation throughout the state. Cincinnati v. Steinkamp, 54 Ohio St., 284.
The attempted limitation of the scope of section 26, of article two, in some of the cases cited, is too narrow; notably is this true of the cases of McGill v. State, and Cass v. Dillon, supra.
. Is the subject of roads and highways, under that section of the constitution, of a local or general nature?
That the subject of roads and highways is capable of being legislated upon by general laws having a uniform operation throughout the state, is conclusively shown by the fact that such laws were passed at the second session of the general assembly after the adoption of the. constitution, and remain in force in substantially the same form to this day, and no local or special act on the subject of roads was passed for many years' thereafter.
The subject of roads is of so general a nature, that by section 19 of the Bill of Rights it is placed alongside of “a time of war, and other public exigencies,” and it is provided that private property may be taken for the purpose of making and repairing roads, without first making compensation therefor; while in all other cases of taking private property for public use, it must be first paid for in money, or secured by a deposit of money. In taking private property for the making and repairing of roads, the officers invoke the *484 power of eminent domain, one of the highest attributes of sovereignty, a power which can not be invoked for a private, but only for a public use. Roads and highways are laid out, surveyed, located, constructed and kept in repair at the expense of the public and for the free use of the public. Without them all public business would be crippled, trade and commerce would be ruined, and it would be impracticable to reach our churches and public schools.
In the case of Grove v. Leidy, 9 C. C. Rep., 272, the subject of roads was held to be of a general nature, requiring legislation having a unifoim operation throughout the state, and that case was affirmed by this court in the case of Leidy v. Grove, 53 Ohio St., 662.
There is another consideration. To hold the subject of roads to be of a general nature requiring laws of uniform operation throughout the state, would make it the interest of all to secure the passage of the best possible system of general road laws. ;
Such laws could be amended from time to time as experience might suggest, and but little time need be taken to consider and pass such amendments. But regarding the subject of roads as of a local nature, each locality would be interested in some local scheme of road laws, to the exclusion of the general road laws of the state. Under such local system each member of the general assembly, instead of bettering the general road laws of the .state, would find more incentive to secure the passage of local acts affecting his immediate constituents or county, or some township, or particular road; and a member having succeeded in obtaining all the local road laws re *485 quired by his section, would feel but little interest in securing road legislation for other parts of the state, unless thereby he could get a return of favors for some other local measure in which he .might take a special interest. But general legislation would induce each member to be vigilant in the service of the whole people, because thereby he could best serve his own constituents.
From these considerations, it is clear that the subject of roads is of a general nature, and that it is not only capable of being, but ought to be, legislated upon by general laws having a uniform operation throughout the state. The -limitations in said section twenty-six, exclude local and special legislation as to roads, and all such legislation is necessarily unconstitutional.
This conclusion has been reached after mature deliberation, and we might say with regret, as it involves the overruling of the second syllabus of the ease of State ex rel Hibbs v. Commissioners of Franklin county, 35 Ohio St., 458. With the highest regard for the eminent jurist who wrote the opinion in that case, and the able judges who then composed the court, we tried to reconcile that case with the provisions of the constitution, but were unable to do so, and we therefore reluctantly overrule the second syllabus. It seems so clear that the subject of roads is of a general nature, that we would be doing violence to our oaths to hold otherwise. The oath of a judge is to support the constitution, and he takes no oath to follow former decisions.
As the act in question taxes the whole county, including the county seat,' for road purposes, but prohibits any of the money from being expended *486 upon the roads within the' county seat, it seems to be in conflict with section two of article one of the constitution, which provides that, “All political power is inherent in the people. Government is instituted for their equal protection and benefit. But as this point was not presented by counsel in their briefs, it is left undecided.
But it is urged, that a majority of those voting on the subject, voted in favor of the improvement of the roads in Athens county under this act, and that the majority should rule. The answer is, that the majority must rule inside of the provision of the constitution, and the act being unconstitutional, the vote could not make that lawful, which under the constitution is unlawful. To vote in favor of, or petition for an improvement under an unconstitutional act, can not give .validity to such an act,- so as to bind those who do not vote or petition for such improvement.
The judgment of the circuit court, as well as the judgment of the court of common pleas, is reversed, and the cause is remanded to the court of common pleas, with instructions to overrule the demurrer to the petition, and for further proceedings in accordance with this opinion.

Judgment reversed and cause remanded.